INLAND LAND APPRECIATION FUND, L.P., *et al.*, Plaintiffs-Appellants, v. THE COUNTY OF KANE, Defendant-Appellee.

Second District    No. 2—02—1117

Opinion filed December 5, 2003.

Thomas R. Burney, Brian M. Fornek, and Timothy J. McGonegle, all of Schain, Burney, Ross & Citron, Ltd., of Chicago, for appellants.

Meg Gorecki, State's Attorney, of St. Charles (Martin P. Moltz and Sally A. Swiss, both of State's Attorneys Appellate Prosecutor's Office, of counsel), and Kenneth C. Shepro, of Katz, Randall, Weinberg & Richmond, of Chicago, for appellee.

JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiffs, Inland Land Appreciation Fund, L.P., and Firstar Bank of Illinois, appeal the judgment of the circuit court of Kane County in favor of defendant Kane County entered after a bench trial on count IV of plaintiffs' complaint and defendant's counterclaim. We affirm.

The following facts are undisputed. Plaintiffs, who own several properties in Kane County, submitted their proposed Prairie Lakes Subdivision plan to defendant for review in 1995. In April 1996, Paul Schuch, director of defendant's water resources and platting division, sent the following letter to Anthony Casaccio, plaintiffs' representative:

"Dear Mr. Casaccio:

We have retained an outside consultant to perform the preliminary storewater engineering review for the [proposed] subdivision.

The consultant that the County is contracting with is Mr. Don Dressel, P.E., Christopher B. Burke Engineering, Ltd., 9575 West Higgins Road, Suite 600, Rosemont, Illinois 60018.

This arrangement is permissible under the Kane County Subdivision Regulations, section 19—37 *Outside Consultants* [Kane County Subdivision Regulations § 19—37 (eff. December 11, 1962)]. This

section permits the plat officer to engage professional assistance other than the staff, in order to provide a more timely review of the preliminary plans for your site and then pass on the billing to the developer.

If you have any questions or need any additional information, please do not hesitate to contact this office. Please acknowledge receipt of this correspondence and acceptance of these arrangements by signing and returning a copy of this letter."

Section 19—37 of the Kane County Subdivision Regulations (Subdivision Regulations), referred to in the letter, states as follows:

"During the plan review process and during installation and acceptance of the required improvements, the plat officer may engage professional assistance other than staff, in order to properly review or observe the improvement proposed by the applicant. The applicant shall be notified in writing that such professional assistance will be engaged. Prior to such review or observation, the applicant may meet with the plat officer in order to discuss the activity. In addition, the applicant and the county shall enter into an agreement whereby the applicant shall reimburse the county for costs associated with such professional review assistance." Kane County Subdivision Regulations § 19—37 (eff. December 11, 1962).

Casaccio signed and returned the letter on May 11, 1996, indicating plaintiffs' acceptance of the proposed arrangement and requesting a copy of defendant's contract with Burke Engineering. Defendant sent plaintiffs a copy of the contract. Burke Engineering generated a total of $6,964.25 in fees in connection with its review of the Prairie Lakes plan. Before filing suit in this matter, plaintiffs reimbursed defendant in the amount of $2,815.50. The payments were made over the course of eight months. Neither in accepting the reimbursement arrangement nor in making their regular payments did plaintiffs voice any objection to the arrangement.

Ultimately, defendant rejected the Prairie Lakes plan, which prompted plaintiffs to file a five-count complaint against defendant. In count IV, plaintiffs requested a declaratory judgment that section 19—37 of the Subdivision Regulations is *ultra vires* because it is not authorized by the Counties Code (55 ILCS 5/5—1001 *et seq.* (West 2000)). Plaintiffs also sought restitution of the $2,815.50 they paid pursuant to the reimbursement agreement. Defendant filed a counterclaim for the balance owed under the reimbursement agreement. As an affirmative defense, plaintiffs claimed the agreement was void because they entered it under duress. Following a bench trial, the trial court ruled against plaintiffs on count IV, finding authorization for section 19—37 of the Subdivision Regulations in sections 5—1005(3), 5—1018, and 5—1041 of the Counties Code (55 ILCS 5/5—

1005(3), 5—1018, 5—1041 (West 2000)). The trial court ruled for defendant on its counterclaim, rejecting plaintiffs' defense of duress. Plaintiffs filed this timely appeal challenging both rulings of the trial court.

■ We review first the trial court's ruling on plaintiffs' request for a declaratory judgment that section 19—37 of the Subdivision Regulations is *ultra vires*. Section 2—701(a) of the Code of Civil Procedure (735 ILCS 5/2—701(a) (West 2000)), also known as the Declaratory Judgment Act, provides: "The court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, *** including the determination, at the instance of anyone interested in the controversy, of the construction of any statute *** [or] municipal ordinance ***." The grant or denial of a request for a declaratory judgment is subject to *de novo* review to the extent it is not based on factual determinations that are the trial court's province. *Galesburg Clinic Ass'n v. West*, 302 Ill. App. 3d 1016, 1017-18 (1999); *Anthanas v. City of Lake Forest*, 276 Ill. App. 3d 48, 52 (1995).

■ Since we are asked to determine whether a county's ordinance is within the scope of authority granted the county by the legislature, our review is also guided by the following principles:

> "It is a well established rule that the powers of the multifarious units of local government in our State, including counties, are not to be enlarged by liberally construing the statutory grant, but, quite to the contrary, are to be strictly construed against the governmental entity. [Citation.] A county is a mere creature of the State and can exercise only the powers expressly delegated by the legislature or those that arise by necessary implication from expressly granted powers. [Citation.] This necessarily implied power has been interpreted to mean that which is essential to the accomplishment of the statute's declared object and purpose—not simply convenient, but indispensable. [Citation.] However, the implied power need not be absolutely indispensable, and it is sufficient if it is reasonably necessary to effectuate a power expressly granted. [Citations.]" *Connelly v. County of Clark*, 16 Ill. App. 3d 947, 949 (1973).

■ Our review also implicates canons of statutory construction. In construing a statute, a court must ascertain and give effect to the legislature's intent in enacting the statute. *In re J.W.*, 204 Ill. 2d 50, 62 (2003). To determine the intention of the legislature, a court first examines the language of the statute, which is the most reliable indicator of the legislature's intent. *J.W.*, 203 Ill. 2d at 62. Where the statutory language is clear and unambiguous, a court must give effect to the statute as written without reading into the statute exceptions,

limitations, or conditions that the legislature did not express. *J.W.*, 204 Ill. 2d at 62.

■ The trial court cited sections 5—1005(3), 5—1018, and 5—1041 of the Counties Code as bases for section 19—37 of the Subdivision Regulations. Section 5—1005(3) provides:

"Powers. Each county shall have the power:

* * *

3. To make all contracts and do all other acts in relation to the property and concerns of the county necessary to the exercise of its corporate powers." 55 ILCS 5/5—1005(3) (West 2000).

Section 5—1018 provides in relevant part:

"Reimbursement for expenses; employment of personnel. ***

A county board may employ, appoint or contract for the services of such clerical, stenographic and professional personnel for the members of the county board, the committees of the board and the chairman of the board as the board finds necessary or desirable to the conduct of the business of the county, and may fix the compensation of and pay for the services of such personnel." 55 ILCS 5/5—1018 (West 2000).

■ We hold that the preceding sections of the Counties Code provide authority for section 19—37 of the Subdivision Regulations. Section 19—37 essentially permits defendant to engage in two types of contracts. First, it authorizes defendant to contract with an outside professional for assistance in reviewing a plan. Authority for such contracts lies in section 5—1018 of the Counties Code, which expressly permits a county board to "contract for the services of such *** professional personnel for the members of the county board, the committees of the board and the chairman of the board as the board finds necessary or desirable to the conduct of the business of the county." 55 ILCS 5/5—1018 (West 2000). Section 19—37 of the Subdivision Regulations states that contracts with consultants are designed to enable defendant "to properly review or observe the improvement proposed by the applicant." Kane County Subdivision Regulations § 19—37 (eff. December 11, 1962). Defendant thus expresses its finding that such contracts are "necessary or desirable" to the conduct of defendant's business, and hence, section 19—37's provision for such contracts falls within the imprimatur of section 5—1018.

The second type of contract that section 19—37 authorizes is a contract between the applicant and defendant by which the applicant agrees to reimburse defendant for the fees paid to the consultant. Although there is no specific authorization in the Counties Code for such reimbursement agreements, they fall within the broad contractual power conferred by section 5—1005(3), which authorizes counties to

"make all contracts and do all other acts in relation to the property and concerns of the county necessary to the exercise of its corporate powers." 55 ILCS 5/5—1005(3) (West 2000). The word "necessary," as used here, "is not to be interpreted as referring to such measures as are absolutely and indispensably necessary, but includes all appropriate means which are conducive or adaptable to the end to be accomplished and which in the judgment of the [county] board will most advantageously effect it." *Hall v. County of Cook*, 359 Ill. 528, 543 (1935). Defendant has given its plat officer the authority to contract not only for a consultant's services in reviewing a planner's submission but also for the reimbursement of the consultant's fees in order to defray defendant's costs. We cannot say such reimbursement contracts are not "conducive or adaptable to the end to be accomplished" or that they are not the means "which in the judgment of the [county] board will most advantageously effect it." We note that, although defendant does not rely on section 5—1005(3) in its brief, we may affirm the judgment of the trial court on any basis in the record (*People v. Everette*, 141 Ill. 2d 147, 158 (1990)). Because we find adequate authority for section 19—37 of the Subdivision Regulations in sections 5—1005(3) and 5—1018 of the Counties Code, we need not inquire whether section 5—1041 also provides such authority as defendant argues. For the foregoing reasons, we conclude that the trial court did not err in holding that authority for section 19—37 of the Subdivision Regulations rests in the Counties Code.

We turn now to the judgment of the trial court on defendant's counterclaim for the remainder of the balance owed under the reimbursement agreement. In their answer to the counterclaim, plaintiffs did not dispute that they entered into the reimbursement arrangement with defendant. Instead, they asserted the affirmative defense of duress, claiming that they agreed to reimburse defendant only because they believed, based on Schuch's letter to Casaccio, that refusal either was impossible because the consultant had already been hired, or would in any event result in defendant delaying or altogether halting its review of plaintiffs' plan. At trial, plaintiffs presented the testimony of Casaccio to support these two claims. The trial court rejected the duress claim, finding that "at the request of the plaintiffs and with the plaintiffs' concurrence, the defendant completed the review process under the statute which included the use of the professional services accepted by the plaintiffs." Plaintiffs, the trial court found, "routinely paid *** invoices for professional services submitted to it as they came due until approximately October 1999."

■ A reviewing court may reverse the trial court's judgment following a bench trial only if it is against the manifest weight of the

evidence. *1350 Lake Shore Associates v. Mazur-Berg*, 339 Ill. App. 3d 618, 628 (2003). A judgment is against the manifest weight of the evidence only when an opposite conclusion is clearly evident or the factual findings on which it is based are unreasonable, arbitrary or not based on the evidence. *Mazur-Berg*, 339 Ill. App. 3d at 628-29. The trial court rejected plaintiffs' duress claim, having found that plaintiffs agreed to the reimbursement arrangement and paid amounts under the contract over the course of eight months. The trial court provided no other findings, yet we will presume that the court found all controverted facts in favor of the prevailing party (*McMahon v. Chicago Mercantile Exchange*, 221 Ill. App. 3d 935, 951 (1991)).

■ Economic duress is a condition where one is induced by a wrongful act or threat of another to make a contract under circumstances that deprive one of the exercise of one's own free will. *Hurd v. Wildman, Harrold, Allen & Dixon*, 303 Ill. App. 3d 84, 91 (1999). To establish duress, it must be shown that the act or threat left the individual bereft of the quality of mind essential to the making of a contract. *Hurd*, 303 Ill. App. 3d at 91. The acts or threats complained of must be wrongful; however, the term "wrongful" is not limited to acts that are criminal, tortious, or in violation of a contractual duty, but extends to acts that are wrongful in a moral sense as well. *Hurd*, 303 Ill. App. 3d at 91.

■ The trial court found implausible Casaccio's claim that he believed it impossible to refuse defendant's offer because Schuch's letter implied that defendant had already retained the consultant. Indeed, Casaccio's claim of impossibility begs the question. Whether or not the consultant had already been hired, Schuch's letter at least purports to give plaintiffs the opportunity to accept or reject the reimbursement arrangement. Section 19—37, as noted above, contemplates two separate contracts: one between defendant and the consultant, the other between defendant and the applicant. The core question, then, is whether the purported opportunity to refuse the reimbursement arrangement was illusory, *i.e.*, whether plaintiffs' wills were overborne by the adverse consequences they perceived would follow upon refusal. The trial court rightly found incredible Casaccio's testimony that he believed defendant would halt its review of plaintiffs' plan if they refused to reimburse defendant. The letter contains not even a hint of such a threat.

Of course, Casaccio also testified that Schuch's remark that the consultant would enable defendant "to provide a more timely review" implied that review would not be timely if plaintiffs rejected the arrangement. Casaccio's inference is dubious; the letter states that the consultant was retained to provide "*more* timely review" not simply

"timely review." (Emphasis added.) However, the degree of timeliness that defendant conditioned on plaintiffs' agreeing to reimburse is ultimately beside the point, for the Subdivision Regulations require that defendant complete its review of a proposed plan "within 60 days" after it is submitted. Kane County Subdivision Regulations § 19—34(5) (eff. December 11, 1962). Schuch nowhere suggested in his letter that defendant would fail to meet this deadline if plaintiffs refused to reimburse defendant. Therefore, the trial court rightly found that what plaintiffs risked by declining the reimbursement agreement, *i.e.*, review completed not as soon as might otherwise occur, was not so significant that they were coerced into agreeing.

Importantly, the trial court found an alternative ground for its ruling in the fact that plaintiffs submitted payments under the agreement for eight months as defendant continued to review the plan. A victim of duress who accepts the benefits flowing from the contract for any considerable length of time ratifies the contract. *Carlile v. Snap-on Tools*, 271 Ill. App. 3d 833, 842 (1995). The trial court correctly found that plaintiffs ratified the contract by performing and receiving the benefits of performance over several months.

For the reasons stated above, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

BOWMAN and GILLERAN JOHNSON, JJ., concur.