817 N.E.2d 160 (2004)
352 Ill. App.3d 847
288 Ill.Dec. 35
The VILLAGE OF ITASCA, Plaintiff-Appellant,
v.
The VILLAGE OF LISLE and Environetx, LLC, Defendants-Appellees.
No. 2-03-1092.
Appellate Court of Illinois, Second District.
October 12, 2004.
*164 Charles E. Hervas, Michael D. Bersani, Dana M. Shannon, Hervas, Sotos, Condon & Bersani, P.C., Itasca, for Village of Itasca.
John N. Pieper, Law Offices of John N. Pieper, Wheaton, for Environetx, LLC, Village of Lisle.
Presiding Justice O'MALLEY delivered the opinion of the court:
Plaintiff, the Village of Itasca appeals the trial court's dismissal with prejudice of its complaint against defendants, the Village of Lisle (Lisle) and Environetx, LLC (Environetx), under the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2002)) and its denial of plaintiff's motion for reconsideration and motion for leave to file an amended complaint. Plaintiff argues that (1) it has standing to bring its claims; (2) the trial court has subject matter jurisdiction over its claims; (3) the trial court's denial of its motion for leave to file an amended complaint was an abuse of discretion; (4) the trial court's denial of its motion for reconsideration was an abuse of discretion; (5) it adequately alleged a claim for imposition of a constructive trust; and (6) the trial court improperly dismissed its claim for tortious interference. We affirm in part and reverse in part.

I. FACTS
Plaintiff and Lisle are municipal corporations located in Du Page County; Environetx is an Illinois limited liability company that sells office products within the State of Illinois. While it was located in Itasca, Environetx generated substantial tax income for the municipality, which received percentages of the company's state sales tax payments under the Service Occupation Tax Act (35 ILCS 115/1 et seq. (West 2002)) and the Retailers' Occupation Tax Act (35 ILCS 120/1 et seq. (West 2002)). In August and September 2000, Environetx agreed to move its sales operations from Itasca to Lisle so that Lisle could benefit from Environetx's state sales tax revenues. Lisle, in turn, offered Environetx a sales tax rebate projected to be worth approximately $1.7 million of the estimated $3 million Lisle would receive from sales tax revenues generated by Environetx over the next 10 years. Thereafter, Environetx began listing Lisle as the site of its sales for state sales tax purposes in its filings with the Illinois Department of Revenue (IDOR). The parties dispute whether Environetx actually moved the site of its sales operations to Lisle.
On October 8, 2002, plaintiff filed a complaint against defendants, for a declaratory judgment invalidating the agreement between defendants, the imposition of a constructive trust on all sales tax revenues retained by Lisle and generated by Environetx, *165 and tortious interference with prospective economic expectation or advantage. In its complaint, plaintiff alleged that the findings of fact Lisle used to support the tax rebate agreement were false (see 65 ILCS 5/8-11-20 (West 2002) (listing statutorily required findings of fact for such tax rebate programs)) and also that Environetx in fact never moved its offices out of Itasca as it claimed. Defendants filed motions to dismiss plaintiff's complaint under sections 2-615 and 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2002)). The trial court dismissed plaintiff's complaint, holding that (1) plaintiff did not have standing to seek a declaratory judgment nullifying defendants' agreement; (2) the court lacked subject matter jurisdiction to determine whether Environetx was falsely reporting to IDOR the origin municipality of its sales; and (3) Lisle had no duty toward plaintiff sufficient to support a tortious-interference-with-a-business-relationship claim and, in any event, Lisle was immune from liability for tortious interference. The trial court subsequently denied plaintiff's motion for reconsideration and motion for leave to file an amended complaint. Plaintiff timely appeals.

II. DISCUSSION
Plaintiff's first issue on appeal is whether the trial court improperly dismissed its action for lack of standing. Our standard of review is de novo. Glisson v. City of Marion, 188 Ill.2d 211, 220-21, 242 Ill.Dec. 79, 720 N.E.2d 1034 (1999).
Here, the trial court found that plaintiff lacked standing to seek a declaratory judgment invalidating the agreement between defendants. The doctrine of standing is designed to preclude persons who have no interest in a controversy from bringing suit. Glisson, 188 Ill.2d at 221, 242 Ill.Dec. 79, 720 N.E.2d 1034. The doctrine assures that issues are raised only by those parties with a real interest in the outcome of the controversy. Glisson, 188 Ill.2d at 221, 242 Ill.Dec. 79, 720 N.E.2d 1034. Standing requires some injury in fact to a legally cognizable interest. Glisson, 188 Ill.2d at 221, 242 Ill.Dec. 79, 720 N.E.2d 1034. The claimed injury must be actual or threatened, and it must be (1) distinct and palpable; (2) fairly traceable to the defendant's actions; and (3) substantially likely to be prevented or redressed by the grant of the requested relief. Glisson, 188 Ill.2d at 221, 242 Ill. Dec. 79, 720 N.E.2d 1034. In the context of an action for declaratory relief, there must be an actual controversy between adverse parties, and the party requesting the declaration must possess some personal claim, status, or right that is capable of being affected by the grant of such relief. Glisson, 188 Ill.2d at 221, 242 Ill.Dec. 79, 720 N.E.2d 1034.
In this case, plaintiff does not have standing to pursue its claim because the relief it seeks is not substantially likely to provide redress for any harm caused it. Plaintiff's alleged injury is its loss of tax revenue due to the fact that Environetx is now listing its sales site as Lisle instead of Itasca. Plaintiff seeks relief in the form of a declaratory judgment nullifying the rebate agreement between defendants. Even if the court were to grant such relief, plaintiff's injury would not be cured. A declaration that the contract between defendants is null and void would not alter Environetx's tax filings and thus would not remedy plaintiff's alleged injury. The only direct result of the declaratory judgment plaintiff seeks would be a cessation of Environetx's rebate benefits from Lisle.
Plaintiff's assertion that a declaration nullifying defendants' agreement would simultaneously be a declaration that Environetx's tax site never moved out of Itasca is *166 simply not true. The issue of the validity of the rebate agreement centers on whether the statutory requirements for the tax rebate program were actually met; the issue of Environetx's tax site centers on whether Environetx's sales operation actually relocated. The two issues are entirely separate, and a ruling in favor of plaintiff on one would not necessitate a ruling in favor of plaintiff on the other. Thus, we find that plaintiff lacks standing to pursue its declaratory judgment claim.
However, in its proposed amended complaint, plaintiff also sought a declaration that Environetx was falsely reporting the site of its sales. If the court had jurisdiction to find that Itasca, and not Lisle, was the actual site of Environetx's sales, and if the court allowed plaintiff to amend its complaint, then the court would address an issue that, if resolved in plaintiff's favor, would afford plaintiff redress for its alleged injury. Accordingly, we must now consider plaintiff's next two issues on appeal: whether the circuit court has subject matter jurisdiction over plaintiff's false-tax-site claim, and whether the trial court should have allowed plaintiff's amended complaint, which included the false-tax-site claim.
Plaintiff's second issue on appeal is whether the trial court improperly dismissed its action for want of subject matter jurisdiction under section 2-619 of the Code. We will review de novo the trial court's grant of defendants' motion to dismiss. Krilich v. American National Bank & Trust Co. of Chicago, 334 Ill.App.3d 563, 571, 268 Ill.Dec. 531, 778 N.E.2d 1153 (2002).
The circuit courts of Illinois have original jurisdiction over all justiciable matters. Employers Mutual Cos. v. Skilling, 163 Ill.2d 284, 287, 206 Ill.Dec. 110, 644 N.E.2d 1163 (1994); Ill. Const. 1970, art. VI, § 9. While the legislature generally cannot deprive courts of this jurisdiction, an exception arises in administrative actions. People v. NL Industries, 152 Ill.2d 82, 96, 178 Ill.Dec. 93, 604 N.E.2d 349 (1992). Because it establishes administrative agencies and statutorily empowers them, the legislature may vest exclusive jurisdiction in an administrative agency. NL Industries, 152 Ill.2d at 96-97, 178 Ill.Dec. 93, 604 N.E.2d 349. However, a legislative enactment divesting the circuit courts of their original jurisdiction through a comprehensive statutory administrative scheme must be explicit. Skilling, 163 Ill.2d at 287, 206 Ill.Dec. 110, 644 N.E.2d 1163.
Here, the trial court found that it lacked subject matter jurisdiction to rule that Environetx was misrepresenting the origin municipality of its sales. Defendants argue that IDOR has exclusive jurisdiction over administration of sales taxes generated under the Service Occupation Tax Act and the Retailers' Occupation Tax Act, and, therefore, the trial court lacked subject matter jurisdiction. In support of this proposition, defendants first refer to the Department of Revenue Law, which states:
"[IDOR] has the power to administer and enforce all the rights, powers, and duties contained in the Retailers' Occupation Tax Act to collect all revenues thereunder * * *." 20 ILCS 2505/2505-25 (West 2002).
See also 20 ILCS 2505/2505-100 (West 2002) (similar language with respect to the Service Occupation Tax Act).
However, in Skilling, the supreme court stated that, where the legislature seeks to remove original jurisdiction from the circuit courts, it must do so explicitly. Skilling, 163 Ill.2d at 287, 206 Ill.Dec. 110, 644 N.E.2d 1163. Thus, a statute that said that "`[a]ll questions arising under this *167 Act * * * shall * * * be determined by the [administrative agency]'" was not sufficiently explicit to divest circuit courts of original jurisdiction. Skilling, 163 Ill.2d at 287, 206 Ill.Dec. 110, 644 N.E.2d 1163, quoting 820 ILCS 305/18 (West 1992). Here, the Department of Revenue Law likewise does not include any "exclusionary language." See Skilling, 163 Ill.2d at 287, 206 Ill.Dec. 110, 644 N.E.2d 1163. Therefore, IDOR cannot be said to have exclusive jurisdiction over this matter.
Defendants rely heavily on the decision in Village of Niles v. K mart Corp., 158 Ill.App.3d 521, 523-24, 110 Ill.Dec. 526, 511 N.E.2d 703 (1987). In Village of Niles, the court held that the Municipal Retailers' Occupation Tax Act (65 ILCS 5/8-11-1 (West 2002)) gave exclusive jurisdiction to IDOR. In that case, the language of the act stated that "`[t]he tax imposed * * * pursuant to this [s]ection * * * shall be collected and enforced by [IDOR].'" Village of Niles, 158 Ill.App.3d at 523-24, 110 Ill.Dec. 526, 511 N.E.2d 703, quoting Ill. Rev.Stat.1983, ch. 24, par. 8-11-1; cf. Skilling, 163 Ill.2d at 287, 206 Ill.Dec. 110, 644 N.E.2d 1163, quoting 820 ILCS 305/18 (West 1992) (no exclusive jurisdiction where act stated, "questions arising under this Act * * * shall * * * be determined by the [administrative agency]"). However, though Village of Niles is factually similar to the current case and interprets a related law, we are nonetheless bound by the later supreme court precedent announced in Skilling, which requires explicit language of exclusivity in order to divest circuit courts of their jurisdiction. Skilling, 163 Ill.2d at 287, 206 Ill.Dec. 110, 644 N.E.2d 1163.
Defendants attempt to distinguish NL Industries and Skilling. They argue that, in NL Industries, the supreme court found that the agency did not have exclusive jurisdiction because the underlying act itself contained provisions indicating that the legislature intended the circuit court to have jurisdiction. While we do not disagree with their reading of NL Industries, defendants nevertheless cannot distinguish the plain rule stated in Skilling, which requires that the legislature include explicit language to confer exclusive jurisdiction to an agency. See Skilling, 163 Ill.2d at 287, 206 Ill.Dec. 110, 644 N.E.2d 1163. Accordingly, we conclude that IDOR does not have exclusive jurisdiction over this matter.
Where a circuit court and an administrative agency both have jurisdiction over a matter, they are said to have concurrent jurisdiction. See NL Industries, 152 Ill.2d at 94-101, 178 Ill.Dec. 93, 604 N.E.2d 349. The doctrine of primary jurisdiction, which applies when a court and an agency have concurrent jurisdiction over the subject matter of a dispute, states that a court with jurisdiction over a matter should, in some instances, stay judicial proceedings pending referral of the controversy, or a portion of it, to an administrative agency having expertise in the area. NL Industries, 152 Ill.2d at 95, 178 Ill.Dec. 93, 604 N.E.2d 349. No fixed formula exists for applying the doctrine of primary jurisdiction; rather, in every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation. Heller Equity Capital Corp. v. Clem Environmental Corp., 232 Ill.App.3d 173, 179, 173 Ill.Dec. 396, 596 N.E.2d 1275 (1992). When an agency's technical expertise would help resolve the controversy, or when there is a need for uniform administrative standards, a matter should be referred to an administrative agency. Kellerman v. MCI Telecommunications Corp., 112 Ill.2d 428, 445, 98 Ill.Dec. 24, 493 N.E.2d 1045 (1986). Conversely, when *168 an agency's technical expertise is not likely to be helpful, or there is no need for uniform administrative standards, courts should not relinquish their authority over a matter to an agency. Kellerman, 112 Ill.2d at 445, 98 Ill.Dec. 24, 493 N.E.2d 1045. Where the legal and factual issues involved are standard fare for judges, the issues must be deemed to be within the conventional competence of the courts, and referral to an administrative body is not required. Kellerman, 112 Ill.2d at 446, 98 Ill.Dec. 24, 493 N.E.2d 1045.
Therefore, in Kellerman, the supreme court held that the primary jurisdiction doctrine did not require a stay pending referral to the Federal Communications Commission, because the plaintiff's allegations that the defendant phone company's advertisements violated the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 et seq. (West 2002)) and the Uniform Deceptive Trade Practices Act (815 ILCS 510/1 et seq. (West 2002)) did not require agency expertise for their resolution. Kellerman, 112 Ill.2d at 434, 446, 98 Ill.Dec. 24, 493 N.E.2d 1045. The court noted that the plaintiff did not contest the reasonableness or lawfulness of the defendant's charges or billing practices, but instead sought recovery for the defendant's failure to disclose certain facts. Kellerman, 112 Ill.2d at 446, 98 Ill.Dec. 24, 493 N.E.2d 1045. Therefore, it was not necessary for the court to evaluate the economics or technology of the regulated industry, and the legal and factual issues involved were within the conventional competence of the courts. Kellerman, 112 Ill.2d at 446, 98 Ill.Dec. 24, 493 N.E.2d 1045, quoting Nader v. Allegheny Airlines, Inc., 426 U.S. 290, 305-06, 96 S.Ct. 1978, 1987, 48 L.Ed.2d 643, 656 (1976).
Likewise, in Steward v. Allstate Insurance Co., 92 Ill.App.3d 637, 47 Ill.Dec. 893, 415 N.E.2d 1206 (1980), the court found that the doctrine of primary jurisdiction did not apply where the plaintiffs alleged breach of an insurance contract. The plaintiffs alleged that their insurance policies were cancelled in violation of section 143.21 of the Illinois Insurance Code (215 ILCS 5/143.21 (West 2002)), which provided that, after a policy had been in effect for one year, or if the policy was a renewal policy, an insurance company could not cancel the insurance policy except for one of three specified reasons. Steward, 92 Ill.App.3d at 638-39, 47 Ill.Dec. 893, 415 N.E.2d 1206. The court stated that the case was not the type requiring administrative expertise or discretion and, thus, that the issues presented should be heard in the circuit court. Steward, 92 Ill.App.3d at 642, 47 Ill.Dec. 893, 415 N.E.2d 1206.
On the other hand, in Kerr-McGee Chemical Corp. v. Department of Nuclear Safety, 204 Ill.App.3d 605, 149 Ill.Dec. 674, 561 N.E.2d 1370 (1990), the court found that the doctrine of primary jurisdiction required that the issues in the case be referred to the appropriate agency. The plaintiff in Kerr-McGee raised "complex questions concerning the meaning of [f]ederal statutes and regulations pertaining to nuclear safety." 204 Ill.App.3d at 611, 149 Ill.Dec. 674, 561 N.E.2d 1370. Given the highly technical nature of the questions presented, the court noted that there were "few cases in which application of [the doctrine of primary jurisdiction] would be more appropriate than the present case." Kerr-McGee, 204 Ill.App.3d at 611, 149 Ill.Dec. 674, 561 N.E.2d 1370. Thus, the issues were referred to the specialized technical expertise of the Nuclear Regulatory Commission. Kerr-McGee, 204 Ill. App.3d at 611, 149 Ill.Dec. 674, 561 N.E.2d 1370.
Here, plaintiff asks the court to determine whether Environetx was filing false reports to IDOR. Specifically, plaintiff *169 contends that Environetx has been incorrectly stating its sales site in its IDOR filings. In determining whether Environetx's sales actually originated out of Lisle as reported on tax returns, a court need not have any special insight into those issues within the purview of IDOR. The court need only make a finding of fact as to whether Environetx was misrepresenting its sales site.
While IDOR does have a framework through which it administers the taxes in this case (see 86 Ill. Adm.Code § 130.101 et seq. (2004); 86 Ill. Adm.Code § 270.115 (2004)), and defendants cite private letter rulings on the issue of companies' proper tax sites, those tax-site determinations do not invoke expertise beyond the conventional competence of a court. Indeed, the private letter rulings and regulations cited by defendants indicate that the place of the seller's acceptance is the site of the sale for tax purposes. See 86 Ill. Adm. Code § 270.115 (2004). Thus, the court need only make a straightforward determination of the place Environetx's sales were accepted; the task requires very limited interpretation of the regulations or the taxes involved. While an agency's expertise might be helpful, for example, in determining the validity of a particular billing practice under applicable regulations, or in interpreting highly technical nuclear safety regulations, referral to an agency is not necessary where the facts to be determined are like those generally determined by courts, such as the location of the formation of a contract. Kellerman, 112 Ill.2d at 445, 98 Ill.Dec. 24, 493 N.E.2d 1045; see, e.g., Holder v. Aultman, Miller, & Co., 169 U.S. 81, 18 S.Ct. 269, 42 L.Ed. 669 (1898) (determining place of formation of sale contract).
Defendants argue that allowing the trial court to make a ruling on the tax-site issue would result in inconsistent administration of sales taxation. However, as discussed above, the regulations used for determining the proper tax site of a sale are straightforward and do not require agency expertise for their interpretation. A court may determine the proper tax sales site without creating inconsistent results.
We note that the record indicates that IDOR had undertaken an audit of Environetx during the pendency of this litigation. However, the record does not indicate whether IDOR was specifically auditing Environetx's reporting of its sales site in its tax reports. While there is greater support for allowing an agency primary jurisdiction where it has already begun investigating, we find that, even if IDOR is conducting an investigation of Environetx's tax site, the trial court may still proceed with this action. See Heller Equity Corp., 232 Ill.App.3d at 179-80, 173 Ill.Dec. 396, 596 N.E.2d 1275 (defendant arguing illegality of agreement under administrative regulations sought a stay of judicial proceedings pending resolution of agency investigation, but court properly denied stay where defendant could not demonstrate to what stage agency's investigation had progressed or whether agency intended to pursue matter further).
In summary, we find that the legislature did not vest exclusive jurisdiction in IDOR for the administration of the taxes in this case, and thus the trial court does not lack subject matter jurisdiction. Moreover, the doctrine of primary jurisdiction does not dictate that the action in this case should be stayed pending agency resolution.
In its original complaint, plaintiff did not ask the court to declare that Environetx was misrepresenting its sales site on its tax filings. Plaintiff sought such a declaration in its amended complaint, but the trial court denied plaintiff leave to file the amended complaint. Therefore, having determined that the trial court would have *170 had subject matter jurisdiction over plaintiff's claim seeking a declaration that Environetx's true sales site remains in Itasca, we now move to plaintiff's third issue on appeal: whether the trial court should have allowed plaintiff leave to file its amended complaint.
Plaintiff argues that the trial court abused its discretion in denying it leave to file an amended complaint. We agree. In order to determine whether the trial court has abused its discretion in denying an amended complaint, we must look to four factors: (1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the complaint could be identified. Loyola Academy v. S & S Roof Maintenance, Inc., 146 Ill.2d 263, 273, 166 Ill.Dec. 882, 586 N.E.2d 1211 (1992). Where the exercise of discretion has been frustrated by the application of an erroneous rule of law, review is required to permit the exercise in a manner consistent with the law. Loyola Academy, 146 Ill.2d at 274, 166 Ill.Dec. 882, 586 N.E.2d 1211.
Applying the first element, based on the discussion above, plaintiff's amended complaint cured its original defective pleading by asserting a claim for which it has standing. Under the other factors, there is nothing to indicate that defendants would be prejudiced or surprised by the amendment. Indeed, plaintiff argued throughout the proceedings in circuit court that Environetx was incorrectly reporting Lisle as the site of its sales. Finally, this is plaintiff's first attempt to amend its complaint, and the amendment came before the merits of plaintiff's claim had been reached.
We hold that the trial court abused its discretion in denying plaintiff leave to file an amended complaint. Plaintiff should be allowed to amend its complaint to seek a declaration that Itasca, and not Lisle, is Environetx's true tax site.[1]
Plaintiff's fourth issue on appeal is whether the trial court abused its discretion in denying its motion for reconsideration. However, given the above discussion, the issue becomes moot. As has been set forth above, plaintiff has a right to pursue its action in circuit court.
Plaintiff's fifth issue on appeal is whether it pleaded a sufficient cause for imposition of a constructive trust on tax money it claims to be entitled to. The trial court dismissed plaintiff's claim to a constructive trust because it found plaintiff lacked standing and did not properly state an action for relief. Given our discussion above, we hold that the trial court erred in dismissing the constructive trust claim for those reasons. We express no further opinion on this issue.
Plaintiff's final issue on appeal is whether the trial court properly dismissed its claim for tortious interference with prospective economic advantage. On appeal, defendants expressly state that they do not challenge the timeliness of plaintiff's tortious interference claim. Plaintiff argues that it adequately alleged a cause for tortious interference and that Lisle does not enjoy immunity from liability for tortious interference. We disagree with the first argument and agree with the second.
*171 We first address the trial court's ruling that plaintiff did not adequately plead a cause for tortious interference. A motion to dismiss under section 2-615 of the Code challenges the sufficiency of the complaint. Muirfield Village-Vernon Hills, LLC v. K. Reinke, Jr., & Co., 349 Ill.App.3d 178, 187, 284 Ill.Dec. 582, 810 N.E.2d 235 (2004). The trial court must determine whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a claim for which relief may be granted. Muirfield Village, 349 Ill.App.3d at 187, 284 Ill.Dec. 582, 810 N.E.2d 235. In making this determination, the trial court must accept as true all well-pleaded facts in the complaint. Muirfield Village, 349 Ill.App.3d at 187-88, 284 Ill.Dec. 582, 810 N.E.2d 235. We review de novo the trial court's determination. Muirfield Village, 349 Ill.App.3d at 188, 284 Ill.Dec. 582, 810 N.E.2d 235.
To state a cause of action for tortious interference with prospective economic advantage, a plaintiff must allege (1) a reasonable expectancy of entering into a valid business relationship; (2) the defendant's knowledge of the expectancy; (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy; and (4) damage to the plaintiff resulting from the defendant's interference. Voyles v. Sandia Mortgage Corp., 196 Ill.2d 288, 300-01, 256 Ill.Dec. 289, 751 N.E.2d 1126 (2001).
The trial court in this case found that plaintiff's complaint did not adequately state a cause of action for tortious interference because plaintiff did not have a reasonable expectation of a business advantage to support its claim. Plaintiff argues on appeal that Lisle induced Environetx's change of its tax site through an illegal, sham agreement. It alleges that a reasonable expectancy arises out of its belief that it would continue to receive tax income from Environetx's reporting its tax site as Itasca.
Defendants counter that, while plaintiff received money from the state out of Environetx's tax payments, its receipt of those monies did not arise out of a business relationship with Environetx but, instead, a governmental relationship. Plaintiff fails to respond to this argument, and it cites to no authority establishing that a municipality's receipt of funds from a resident company's state tax payments creates a business relationship. Thus, we hold that there was no valid business expectancy in this case and that the trial court correctly dismissed plaintiff's tortious interference claim. See Wagner v. Nottingham Associates, 464 So.2d 166, 169 nn. 4, 5 (Fla.App.1985) (stating that it could not find any case sustaining a tortious interference action where a governmental relationship was alleged to be the advantageous relationship involved and expressing doubt that an advantageous governmental relationship could support the first requirement of the prima facie case).
Plaintiff also argues that Lisle is not immune from plaintiff's tortious interference claim. Because the trial court dismissed plaintiff's tortious interference claim on the basis of Lisle's tort immunity as well as on the basis of plaintiff's defective pleading, we will address this argument.
A motion to dismiss under section 2-619 of the Code admits all well-pleaded facts, as well as the reasonable inferences to be drawn from those facts. Compton v. Ubilluz, 351 Ill.App.3d 223, 228, 285 Ill.Dec. 346, 811 N.E.2d 1225 (2004). Additionally, it admits the legal sufficiency of the complaint but asserts the existence of an affirmative matter to avoid or defeat the claim. Compton, 351 Ill. *172 App.3d at 228, 285 Ill.Dec. 346, 811 N.E.2d 1225. The trial court here dismissed plaintiff's tortious interference claim under section 2-619 because it held that Lisle was immune from the suit. Our review is de novo. Compton, 351 Ill.App.3d at 228, 285 Ill.Dec. 346, 811 N.E.2d 1225.
Generally, a municipality's performance of discretionary duties is immune from tort liability, but its performance of ministerial duties is not. Snyder v. Curran Township, 167 Ill.2d 466, 473, 212 Ill.Dec. 643, 657 N.E.2d 988 (1995); see 745 ILCS 10/2-201 (West 2002) (public actors immune for acts of discretion). The distinction between discretionary and ministerial functions resists precise formulation, and the determination of whether acts are discretionary or ministerial must be made on a case-by-case basis. Snyder, 167 Ill.2d at 474, 212 Ill.Dec. 643, 657 N.E.2d 988. Notwithstanding the ad hoc nature of these determinations, it has been recognized that discretionary acts are those that are unique to a particular public office, while ministerial acts are those that a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act. Snyder, 167 Ill.2d at 474, 212 Ill.Dec. 643, 657 N.E.2d 988.
Lisle's decision to enter into a rebate agreement with Environetx was certainly discretionary and would be protected by the municipality's tort immunity. However, its approval of the contract, based on its finding that the requisite statutory factors had been met (see 65 ILCS 5/8-11-20 (West 2002) (listing required findings in order for a municipality to enter into a tax rebate agreement)), was ministerial, because the state statute proscribed the set of facts under which the municipality could enter into the rebate agreement. See Snyder, 167 Ill.2d at 474-75, 212 Ill.Dec. 643, 657 N.E.2d 988 (once a decision requiring discretion is made, actions implementing it in conformance with the law are ministerial). Where tailored statutory and regulatory guidelines place certain constraints on the decisions of officials, a court should be reluctant to label decisions falling wholly outside the established parameters as "discretionary." Snyder, 167 Ill.2d at 474, 212 Ill.Dec. 643, 657 N.E.2d 988. Thus, a township exercised discretion in deciding that a particular roadway curve should have a warning sign placed by it, but erecting the sign pursuant to statutory standards under the Illinois Vehicle Code (625 ILCS 5/11-304 (West 1992)) was a ministerial function. Snyder, 167 Ill.2d 466, 212 Ill.Dec. 643, 657 N.E.2d 988; Boub v. Township of Wayne, 291 Ill.App.3d 713, 725, 226 Ill.Dec. 44, 684 N.E.2d 1040 (1997) (interpreting Snyder). Likewise here, Lisle exercised discretion in deciding to enter into a rebate agreement with Environetx, but it exercised a ministerial function when making the statutorily required findings to support that agreement. Because plaintiff alleges noncompliance with the ministerial (statutory compliance) aspects of Lisle's entering into the contract, Lisle is not immune from suit.
Defendants argue that Lisle should be immune under section 2-103 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/2-103 (West 2002)), which provides that a local government entity is immune from injury caused by its failure to adopt or enforce any law. However, the issue here is not Lisle's enforcement of a law but, rather, its compliance with it. Defendants cite O'Fallon Development Co. v. City of O'Fallon, 43 Ill.App.3d 348, 356, 2 Ill.Dec. 6, 356 N.E.2d 1293 (1976), in support of their position. *173 However, in O'Fallon Development Co., the court merely found that the defendant municipality was immune from a charge of tortious interference because the plaintiff sought a remedy for the city's failure to enforce regulations on private advertisements. O'Fallon Development Co., 43 Ill. App.3d at 359, 2 Ill.Dec. 6, 356 N.E.2d 1293. Here, by contrast, plaintiff alleges that Lisle did not meet its requirements under a statute, not that it failed to enforce a statute that might have protected plaintiff. Thus, section 2-103 does not apply.
Defendants also cite section 2-104 of the Tort Immunity Act (745 ILCS 10/2-104 (West 2002)). That section provides that a local public entity is not liable for injury caused by denial of any license or similar authorization where the entity is authorized by enactment to determine whether such an authorization should be issued. 745 ILCS 10/2-104 (West 2002). However, plaintiff alleges that Lisle acted outside its statutory authority in approving the rebate agreement. Section 2-104 does not apply.
We hold that Lisle does not enjoy tort immunity on plaintiff's tortious interference claim, but, nevertheless, plaintiff's tort immunity claim was properly dismissed under section 2-615 of the Code.

III. CONCLUSION
For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed in part and reversed in part, and the cause is remanded.
Affirmed in part and reversed in part; cause remanded.
GROMETER and CALLUM, JJ., concur.
NOTES
[1] Plaintiff also sought to add IDOR as a defendant in its amended complaint. We overrule the trial court's denial of leave to file an amended complaint for the reasons stated above. We do not reach the question of whether plaintiff may add IDOR as a defendant.